# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

MATTHEW W. LEVERETT, on behalf of himself and all others similarly situated,

　　　　　　　　　Plaintiff,

　　　　v.

FORD MOTOR COMPANY,

　　　　　　　　　Defendant.

Case No.:　CIV-17-751-R

**Class Action Complaint**

**<u>Jury Trial Demanded</u>**

Plaintiff Matthew W. Leverett ("Plaintiff"), individually and on behalf of the other members of the below-defined nationwide and statewide classes he seeks to represent (collectively, the "Class," unless otherwise identified herein), alleges against Defendant Ford Motor Company ("Ford" or "Defendant"), upon personal knowledge as to himself and his own acts and as to all other matters upon information and belief, as follows:

## <u>NATURE OF THE ACTION</u>

1.　This class action lawsuit is brought by Plaintiff seeking damages, equitable, and declaratory relief on his own behalf and on behalf of the other Class members (defined below), each of whom purchased or leased one or more new Ford trucks equipped with a lift kit and larger-than-stock tires that had been installed/fitted at the time of purchase or lease (the "Lifted Trucks"), within the relevant statute(s) of limitations (the "Class Period").

2.　The frames of the Lifted Trucks sit higher off the ground than "stock" vehicles of the same make and model ("Stock Trucks").  However, the jacks that come

equipped with the Lifted Trucks are the same as those that come equipped with the Stock Trucks—i.e., designed to temporarily raise the comparatively lower frames of the Stock Trucks off the ground to allow drivers to change tires and perform routine maintenance. These jacks cannot safely be used on, and are not compatible with, the relatively higher frames of the Lifted Trucks.

3.      The tires (e.g., metal rims and rubber tires) installed on the Lifted Trucks are larger in diameter than those installed on the Stock Trucks.  However, the spare tires that come equipped with the Lifted Trucks are the same as those that come equipped with the Stock Trucks—i.e., relatively smaller in diameter than those on the Lifted Trucks—and thus do not match the size of, and cannot be used with, the relatively larger tires installed on the Lifted Trucks.

4.      Upon information and belief, each Lifted Truck was sold with a manufacturer's window sticker ("Monroney Sticker") that represented that such vehicle came equipped with a jack and spare tire.  The Monroney Sticker does not disclose that the jack and spare tire are only compatible with the Stock Trucks, but not with the Lifted Trucks.

5.      Upon information and belief, each Lifted Truck comes equipped with a jack and spare tire.  The jack is stored in a compartment inside the vehicle, and the spare tire is housed under the vehicle, below the frame.  As described above, the jack and spare tire are only compatible with the Stock Trucks, but not with the Lifted Trucks.  Thus, Lifted Trucks include *a* jack and spare tire that consumers reasonably assume will work with their vehicle – but the components do not.

6.      Each person who has purchased or leased a Lifted Truck during the time period relevant to this action was injured by overpaying for a vehicle that did not come equipped with a functioning jack and spare tire, as Ford represented, and as each purchaser would have reasonably expected.

7.      As alleged herein, Ford has engaged in unlawful and deceptive practices in connection with the marketing and sale of Lifted Trucks, which has injured Plaintiff and the Class, in violation of the Oklahoma Consumer Protection Act ("OCPA"), Okla. Stat. tit. 15 § 751, *et seq*.

8.      Ford's practices also constitute breaches of the implied warranties of merchantability and/or fitness for a particular purpose under the Uniform Commercial Code (UCC), as adopted by Oklahoma (where Plaintiff resides) and Michigan (Ford's principal place of business), which have injured Plaintiff and the Class and which will continue to injure consumers unless such practices are stopped.

9.      Plaintiff seeks an order awarding monetary damages as well as an order enjoining Ford's practices and declaratory relief that Ford should honor all Ford new truck warranties, even though the trucks have been "lifted."

## JURISDICTION AND VENUE

10.      Defendant regularly conducts business, including the distribution and sale of motor vehicles, in Oklahoma and in Beckham County.

11.      This Court has jurisdiction over this class action pursuant to 28 U.S.C. §1332(d)(2).   The claims of the Class members in this class action are in excess of $5,000,000 in the aggregate, exclusive of interest and costs, and the total number of

members of the proposed Class is believed to be greater than 100.

12.     Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this District, Plaintiff resides in this District, and the Defendant is subject to jurisdiction here and regularly conducts business in this District.

## PARTIES

13.     Plaintiff Matthew Leverett is a citizen of the State of Oklahoma, Beckham County, and is resident of this District in Carter, Oklahoma.  Mr. Leverett purchased a Lifted Truck—a 2017 Ford F-250 Super Duty Truck—during the Class Period from a Ford dealership located in Elk City, Oklahoma.  Mr. Leverett's Lifted Truck came equipped with a non-compatible jack and spare tire.  Additional facts about Plaintiff's experience are described below.

14.     Defendant Ford Motor Company is a Delaware corporation with its principal place of business in Detroit, Michigan.  Ford manufactures and sells (through its dealer-agents and other agents) Lifted Trucks and Stock Trucks of the same make and model.  Ford's common stock trades on the New York Stock Exchange under the ticker symbol "F."

## SUBSTANTIVE ALLEGATIONS

15.     Ford manufactures and sells trucks, including the Ford F-Series line of trucks.

16.     Plaintiff purchased a new 2017 Ford F-250 Super Duty Truck from a Ford dealership located in Elk City, Oklahoma (the "Truck").

- 4 -

17.     Prior to purchase, Plaintiff viewed the Truck parked on the dealership's inventory lot.  As it sat on the lot prior to purchase, the Truck contained a pre-installed 6-inch lift kit and was fitted with tires that were larger in diameter than those on Stock Trucks.

18.     Specifically, the lift kit raised the Truck's suspension by up to six inches above that found on suspensions of Stock Trucks.  The rims and tires on the Truck were increased in diameter as compared to those on Stock Trucks.

19.     Prior to purchase, the lift kit and larger tires were covered under a vehicle service agreement Plaintiff purchased through Ford Motor Credit Company LLC, a division of Ford Motor Company.

20.     However, the lift kit and larger tires, and the remainder of the vehicles to the extent any work would have been performed under Ford's manufacturer's warranty, but which repair might have been attributed to or necessitated by the lift kit or larger tires, were apparently not covered by Ford's manufacturer's warranty and which apparently renders Ford's manufacturer's warranty inapplicable when repairs might be sought at a dealership or Ford facility other than the specific dealership at which the Lifted Truck was purchased, a fact not routinely disclosed to consumers when purchasing or leasing Lifted Trucks off dealership lots ("Warranty Voiding").

21.     Upon information and belief, the Truck's Monroney Sticker listed certain standard and optional equipment included with/on the Truck, including a "Spare Tire & Wheel Lock" and a "Jack" (the "Stock Parts").  When Plaintiff viewed the Truck on the Ford dealership's lot, it included the Stock Parts.  The spare tire was securely mounted in a compartment below the vehicle's frame and the jack was stowed in a covered

compartment inside the vehicle. Plaintiff received these items with his Truck upon purchase.

22.     Unbeknownst to Plaintiff at the time of his purchase, the Stock Parts were incompatible with his Truck. The spare tire was too small to replace any of the Truck's larger-diameter rims/tires, and the jack did not extend sufficiently to raise the Truck to enable someone to safely perform a tire change or other maintenance.

23.     None of the documentation that came with the Truck revealed that the Stock Parts were incompatible with the Truck.

24.     Plaintiff reasonably expected that when he purchased his Truck, it would come equipped with a compatible spare tire and jack. By not receiving compatible versions of these items, Plaintiff has been injured because he paid too much for his Truck.

## CLASS ALLEGATIONS

25.     Plaintiff brings this class action on behalf of himself and all other similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

26.     Plaintiff seeks to represent a Class (the "Nationwide Class") initially defined as:

> All persons who purchased or leased Lifted Trucks (as defined herein) in the United States, within the relevant statute(s) of limitations (the "Nationwide Class Period").

27.     Additionally, Plaintiff seeks to represent the following statewide class (the "Oklahoma Class") initially defined as:

> All persons who purchased or leased Lifted Trucks (as defined herein) in Oklahoma, within the relevant statute(s) of limitations (the "Oklahoma Class Period").

28.     Excluded from each of the Nationwide and Oklahoma Classes (collectively,

the "Classes") are Defendant, and any of its parents, subsidiaries and affiliates, directors and officers, and members of their immediate families.  Plaintiff reserves the right to modify or amend the definitions of the Classes, as appropriate, during the course of this litigation.

29.     The members of the Classes (collectively, the "Class members") are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  While Plaintiff believes that there are not less than hundreds, if not thousands, of Class members (and there will be many more if Ford's practices are not stopped), their precise number is unknown to Plaintiff, but may be ascertained from Ford's books and records and/or determined through discovery.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, including by mail, email, and/or publication.

30.     Plaintiff's respective claims are typical of the claims of the Class members, as he purchased his Truck during the Class Periods and sustained damages as a result of Ford's conduct.

31.     Plaintiff will fairly and adequately represent and protect the interests of the other Class members.  Plaintiff has no interests antagonistic to those of other Class members.  Plaintiff is committed to the vigorous prosecution of this action and has retained counsel experienced in litigation of this nature.

32.     Common questions of law and fact exist as to all Class members and predominate over any questions affecting only individual Class members, including, but not limited to:

a) whether Ford engaged in the conduct alleged herein;

b) whether Ford's alleged conduct violates applicable law;

c) whether Ford's alleged conduct violated the OCPA;

d) whether Ford breached the implied warranties of merchantability and/or fitness for a particular purpose to Class members with respect to the Lifted Trucks;

e) whether Ford's alleged conduct damaged Class members and, if so, the measure of those damages;

f) whether Ford's alleged conduct should be enjoined; and

g) whether declaratory relief should be granted against Ford.

33.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the damages suffered by individual members of the Classes may be relatively small, the expense and burden of individual litigation make it virtually impossible for such members to seek redress for the wrongful conduct alleged. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

34.    Class certification is also appropriate under Rule 23(b)(2) because Ford has acted on grounds that apply generally to the Classes, so that final equitable relief or corresponding declaratory relief is appropriate respecting each of the Classes as a whole. The members of the Classes have suffered and will suffer irreparable harm and damages as a result of Ford's wrongful conduct.

## FIRST CAUSE OF ACTION

**Violation of the Oklahoma Consumer Protection Act**
**Okla. Stat. tit. 15 § 751, *et seq.***
**(Brought on Behalf of the Oklahoma Class)**

35.     Plaintiff repeats and realleges paragraphs 1 through 34 as if fully set forth herein.

36.     Plaintiff brings this Count on behalf of the Oklahoma Class ("Class," for purposes of this Count).

37.     Ford's conduct alleged herein constitutes an "unlawful" practice in violation of the OCPA.   *See* OCPA § 753.   Such conduct includes, but is not limited to, manufacturing and selling Lifted Trucks equipped with Stock Parts that were not compatible with those vehicles (and not disclosing same to consumers), and/or by not providing a working jack and spare tire with its Lifted Trucks, as consumers would have reasonably expected (and not disclosing same to consumers), as well as Warranty Voiding.

38.     Specifically, Ford's unlawful conduct constitutes, *inter alia*, a "deceptive trade practice," which is defined in the OCPA to include "a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person." *See* OCPA §§ 752(13), 753(20).

39.     Ford's unlawful conduct occurred, and continues to occur, in the conduct of trade or commerce and in the course of Ford's business.

40.     As an actual and proximate result of Defendant's misconduct, Plaintiff and the Class were injured and suffered damages by Ford's conduct, including by overpaying for a Lifted Truck that did not come equipped with a functioning jack and spare tire, as

Ford represented, and as each purchaser or lessee would have reasonably expected.

41.     Ford is liable to Plaintiff and the Class for damages in amounts to be proven at trial, including attorneys' fees and costs.  *See* OCPA § 761.1.[1]

## SECOND CAUSE OF ACTION

### UCC Breach of Implied Warranty of Merchantability
### 12A Okla. Stat. Ann. § 2-314
### (Brought on Behalf of the Oklahoma Class)

42.     Plaintiff repeats and realleges paragraphs 1 through 34 as if fully set forth herein.

43.     Plaintiff brings this Count on behalf of the Oklahoma Class ("Class," for purposes of this Count).

44.     Lifted Trucks are "goods" within the meaning of 12A Okla. Stat. Ann. § 2-105.

45.     Plaintiff and the other Class members are "buyers" within the meaning of 12A Okla. Stat. Ann. § 2-103.

46.     Ford (and its dealer-agents and other agents) is and was at all relevant times a "merchant" within the meaning of 12A Okla. Stat. Ann. § 2-104 with respect to the Lifted Trucks.

47.     Under 12A Okla. Stat. Ann. § 2-314, a warranty that goods shall be merchantable and fit for ordinary purposes for which such goods are used is implied in a contract for their sale if the seller is a merchant of goods of that kind.

---

[1] Plaintiff is not seeking injunctive relief under the Oklahoma Consumer Protection Act.

48.     Ford breached the implied warranty of merchantability because the Lifted Trucks were not in merchantable condition and not fit for the ordinary purpose for which such vehicles are used.  Specifically, the Lifted Trucks were equipped with Stock Parts that were not compatible with those vehicles, i.e., a non-compatible spare tire and jack.  Upon information and belief, this is a common issue that affects all Lifted Trucks equally.

49.     Plaintiff and the other Class members have had sufficient dealings with either Ford or its dealership-agents (or other agents) to establish privity of contract between Ford, on the one hand, and Plaintiff and the other Class members, on the other hand. Notwithstanding, privity is not required in this case because Plaintiff and the other Class members are intended third-party beneficiaries of contracts between Ford and its dealers; the dealers were not intended to be the ultimate consumers of the Lifted Trucks. Alternatively, even absent privity, Plaintiff and the other Class members may maintain a direct action against Ford because they are in the chain of distribution of the Lifted Trucks.

50.     As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**

**UCC Breach of Implied Warranty of Fitness for a Particular Purpose**
**12A Okla. Stat. Ann. § 2-315**
**(Brought on Behalf of the Oklahoma Class)**

51.     Plaintiff repeats and realleges paragraphs 1 through 34 and 42 through 50 as if fully set forth herein.

52.     Plaintiff brings this Count on behalf of the Oklahoma Class ("Class," for

purposes of this Count).

53.     Lifted Trucks are "goods" within the meaning of 12A Okla. Stat. Ann. § 2-105.

54.     Plaintiff and the other Class members are "buyers" within the meaning of 12A Okla. Stat. Ann. § 2-103.

55.     Ford (and its dealer-agents and other agents) is and was at all relevant times a "merchant" within the meaning of 12A Okla. Stat. Ann. § 2-104 with respect to the Lifted Trucks.

56.     Under 12A Okla. Stat. Ann. § 2-315, a warranty that goods are fit for the particular purpose for which the goods are used is implied in a contract for their sale if the seller is a merchant of goods of that kind and had reason to know at the time of contracting of the particular purpose for which those goods would be used.

57.     Ford breached the implied warranty of fitness for a particular purpose because, at the time of sale, Ford (or its dealership-agents or other agents) had reason to know that Plaintiff and the Class members would be purchasing or leasing a Lifted Truck that was not a Stock Truck and therefore required a particular, compatible spare tire and jack.  Plaintiff and the Class members relied on Ford's judgment to provide a spare tire and jack suitable for their Lifted Trucks.  Ford failed to do so.  Upon information and belief, this is a common issue that affects all Lifted Trucks equally.

58.      Plaintiff and the other Class members have had sufficient dealings with either Ford or its dealership-agents (or other agents) to establish privity of contract between Ford, on the one hand, and Plaintiff and the other Class members, on the other hand.

Notwithstanding, privity is not required in this case because Plaintiff and the other Class members are intended third-party beneficiaries of contracts between Ford and its dealers; the dealers were not intended to be the ultimate consumers of the Lifted Trucks. Alternatively, even absent privity, Plaintiff and the other Class members may maintain a direct action against Ford because they are in the chain of distribution of the Lifted Trucks.

59.     As a direct and proximate result of Ford's breach of the implied warranty of fitness for a particular purpose, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION

**UCC Breach of Implied Warranty of Merchantability**
**Mich. Comp. Laws § 440.2314**
**(Brought on Behalf of the Nationwide Class)**

60.     Plaintiff repeats and realleges paragraphs 1 through 34 as if fully set forth herein.

61.     Plaintiff brings this Count on behalf of the Nationwide Class ("Class," for purposes of this Count).

62.     Lifted Trucks are "goods" within the meaning of Mich. Comp. Laws ("MCL") 440.2105(1).

63.     Plaintiff and the other Class members are "buyers" within the meaning of MCL 440.2103(1)(a).

64.     Ford (and its dealer-agents and other agents) is and was at all relevant times a "merchant" within the meaning of MCL 440.2104(1) with respect to the Lifted Trucks.

65.     Under MCL 440.2314, a warranty that goods shall be merchantable and fit

for ordinary purposes for which such goods are used is implied in a contract for their sale if the seller is a merchant of goods of that kind.

66.     Ford breached the implied warranty of merchantability because the Lifted Trucks were not in merchantable condition and not fit for the ordinary purpose for which such vehicles are used.  Specifically, the Lifted Trucks were equipped with Stock Parts that were not compatible with those vehicles, i.e., a non-compatible spare tire and jack.  Upon information and belief, this is a common issue that affects all Lifted Trucks equally.

67.     Plaintiff and the other Class members have had sufficient dealings with either Ford or its dealership-agents (or other agents) to establish privity of contract between Ford, on the one hand, and Plaintiff and the other Class members, on the other hand. Notwithstanding, privity is not required in this case because Plaintiff and the other Class members are intended third-party beneficiaries of contracts between Ford and its dealers; the dealers were not intended to be the ultimate consumers of the Lifted Trucks. Alternatively, even absent privity, Plaintiff and the other Class members may maintain a direct action against Ford because they are in the chain of distribution of the Lifted Trucks.

68.     As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

**UCC Breach of Implied Warranty of Fitness for a Particular Purpose**
**Mich. Comp. Laws § 440.2315**
**(Brought on Behalf of the Nationwide Class)**

69.     Plaintiff repeats and realleges paragraphs 1 through 34 as if fully set forth

herein.

70.     Plaintiff brings this Count on behalf of the Nationwide Class ("Class," for purposes of this Count).

71.     Lifted Trucks are "goods" within the meaning of MCL 440.2105(1).

72.     Plaintiff and the other Class members are "buyers" within the meaning of MCL 440.2103(1)(a).

73.     Ford (and its dealer-agents and other agents) is and was at all relevant times a "merchant" within the meaning of MCL 440.2104(1) with respect to the Lifted Trucks.

74.     Under MCL 440.2315, a warranty that goods are fit for the particular purpose for which the goods are used is implied in a contract for their sale if the seller is a merchant of goods of that kind and had reason to know at the time of contracting of the particular purpose for which those goods would be used.

75.     Ford breached the implied warranty of fitness for a particular purpose because, at the time of sale, Ford (or its dealership-agents or other agents) had reason to know that Plaintiff and the Class members would be purchasing or leasing a Lifted Truck that was not a Stock Truck and therefore required a particular, compatible spare tire and jack.  Plaintiff and the Class members relied on Ford's judgment to furnish a spare tire and jack suitable for their Lifted Trucks.  Ford failed to do so.  Upon information and belief, this is a common issue that affects all Lifted Trucks equally.

76.     Plaintiff and the other Class members have had sufficient dealings with either Ford or its dealership-agents (or other agents) to establish privity of contract between Ford, on the one hand, and Plaintiff and the other Class members, on the other hand.

Notwithstanding, privity is not required in this case because Plaintiff and the other Class members are intended third-party beneficiaries of contracts between Ford and its dealers; the dealers were not intended to be the ultimate consumers of the Lifted Trucks. Alternatively, even absent privity, Plaintiff and the other Class members may maintain a direct action against Ford because they are in the chain of distribution of the Lifted Trucks.

77.     As a direct and proximate result of Ford's breach of the implied warranty of fitness for a particular purpose, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against Defendant as follows:

(a) Certification of the proposed Nationwide Class and Oklahoma Class;

(b) Awarding Plaintiff and the members of the proposed Classes damages in an amount to be determined at trial;

(c) Awarding preliminary and permanent equitable relief restraining Defendant from continuing its improper practices set forth herein;

(d) Awarding declaratory and other equitable relief that Ford's truck warranty is not voided on Lifted Trucks as a result of a Stock Truck being converted into a Lifted Truck for trucks sold as Lifted Trucks, in particular at least the "3 yr / 36,000 Bumper / Bumper, 5 yr / 50,000 Powertrain, 5 yr / 60,000 Roadside Assist" typically referenced on the Monroney Sticker on Lifted Trucks, absent a more comprehensive warranty, be declared applicable in full to Lifted Trucks notwithstanding the fact that they

contain lift kits and larger tires (i.e., are Lifted Trucks, as opposed to Stock Trucks);

(e) Awarding attorneys' fees and costs and expert fees and reimbursement of costs and expenses expended in litigating this action; and

(f) Granting such further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury for all claims so triable.

DATED: July 13, 2017

Respectfully submitted,

*/s/ William B. Federman*
William B. Federman (OBA # 2853)
Joshua D. Wells (OBA # 22334)
**FEDERMAN & SHERWOOD**
10205 North Pennsylvania Avenue
Oklahoma City, Oklahoma 73120
Tel: (405) 235-1560
Fax: (405) 239-2112
wbf@federmanlaw.com
jdw@federmanlaw.com

*Counsel for Plaintiff*

Of Counsel:

Patricia I. Avery
Robert S. Plosky
**WOLF POPPER LLP**
845 Third Avenue, 12th Floor
New York, NY 10022
Tel: (212) 759-4600
Fax: (212) 486-2093
pavery@wolfpopper.com
rplosky@wolfpopper.com